# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL ZUBROD,<br><br>Defendant. | No. CR07-2019<br><br>**ORDER ON DETENTION** |

On the 26th day of September, 2007, this matter came on for hearing on the Government's request to have the Defendant detained prior to trial. The government was represented by Assistant United States Attorney Robert L. Teig. The Defendant appeared personally and was represented by Attorney Jane Kelly.

## RELEVANT FACTS

On August 28, 2007, Defendant Michael Zubrod was charged by Indictment (docket number 1) with possession of a firearm after having previously been convicted of a misdemeanor crime of domestic violence. The Defendant entered a plea of not guilty and trial is scheduled before District Judge Mark W. Bennett on December 3, 2007.

Investigator Kevin Rieck of the Chickasaw County Sheriff's Office testified that on May 16, 2007, he received a telephone call from Defendant's father, Larry Zubrod. Larry expressed concern that Defendant may be manufacturing methamphetamine in a pop-up camper on Larry's property. While the record is imprecise, Defendant lives with his parents at times. Larry did not want his son to know that he had called authorities, and he told Investigator Rieck that he should not come to the property at that time. Approximately one week later, Larry called investigator Rieck again and expressed similar concerns.

Shortly before midnight on May 31, 2007, Larry called authorities and reported that Defendant was at the house and out of control. Investigator Rieck was the first officer to respond. Upon arrival at the residence, Investigator Rieck found Defendant in the kitchen with his father. Larry was trying to get Defendant to take his medication and go to bed, but Defendant was uncooperative. According to Investigator Rieck, Defendant was "very agitated," "suspicious," and said that "you're here to kill me." Investigator Rieck, who is nationally certified as a "drug recognition expert," opined that Defendant was "high" on a controlled substance.

After a second officer arrived on the scene, it was determined that Defendant would be taken into custody. Investigator Rieck testified that Defendant resisted, resulting in a "protracted physical altercation." According to Investigator Rieck, it took "a good ten minutes" to get Defendant into custody. At that point, Defendant said, "Shoot me, I know that's why you're here." The second deputy suffered minor injuries in the altercation and both deputies had "blistering" on their arms, which Investigator Rieck attributed to exposure to a controlled substance.

Investigator Rieck requested an ambulance and Defendant was transported to the hospital for a mental health evaluation. While the record is imprecise, Defendant was apparently only hospitalized for a short period of time and was then transported to the jail. After being incarcerated for approximately three weeks, Defendant attended a thirty-day inpatient treatment program at Pathways in Waterloo.

At the time of his arrest, Defendant possessed a bag containing methamphetamine residue and a "snort tube." A search warrant was obtained and a subsequent search of the pop-up camper yielded a firearm and ammunition, together with a handwritten note which said, "Come on you fuckers." Defendant's father told authorities that the gun belonged to him, but he had tried to hide his weapons from Defendant and was surprised that it was found in the camper.

2

Defendant's father also told authorities that Defendant had self-inflicted injuries. Specifically, Defendant had cut himself repeatedly on the head and applied "field strength insecticide" in an apparent effort to kill parasites. Defendant's father reported that they had tried to take Defendant's knives away from him.

On September 9, 2007 (following the return of the Indictment in this case, but prior to Defendant's appearance), Defendant's mother called Chickasaw County authorities and reported that they had found a reddish/white powder in Defendant's possession. Defendant's mother apparently told authorities at that time that Defendant used methamphetamine and "couldn't quit." By the time deputies responded to the scene, Defendant had dumped out the substance and "fled."

According to the Pretrial Services Report, Defendant has never been married, but has two children. The children were apparently adopted, however, and Defendant does not know their current whereabouts. Defendant, age 33, has lived most recently with his parents, and counsel represented that he would return to that residence if released prior to trial. Defendant denied to the pretrial services officer that he had any mental health problems, although the report indicates that he has a yearly appointment at the mental health center in Mason City and has been prescribed Seroquel to help him sleep. Defendant is apparently employed in his father's farming operation, although the extent and duration of that employment is unclear.

Defendant has two convictions for operating while intoxicated, one in 1994 and again in 2000. In addition, Defendant has been convicted of eluding and driving while license denied or revoked. In 2003, Defendant was convicted of "domestic abuse assault without intent causing injury." He was initially sentenced to ninety days in jail, with eighty-eight days suspended, but his probation was eventually revoked and Defendant was sentenced to serve fifty-five days in jail. In 2004, Defendant was convicted of "interference with official acts, bodily injury." He was initially sentenced to 1 year in jail, with 351 days suspended, but was later found in violation of his probation and was

3

sentenced to serve 15 days in jail. According to the Pretrial Services Report, Defendant was charged with nine instances of domestic abuse assault or violation of a no-contact order, which were subsequently dismissed. Defendant also has two convictions for interference with official acts, most recently in 2005.

## CONCLUSIONS OF LAW

The Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq.*, requires the Court to detain arrestees prior to trial in certain cases if the Court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). In *United States v. Salerno*, 481 U.S. 739 (1987), the United States Supreme Court upheld the constitutionality of the Bail Reform Act of 1984, while noting that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." 481 U.S. at 755.

A finding that no condition or combination of conditions will reasonably assure the safety of any other person and the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A finding that no condition or combination of conditions will reasonably assure the appearance of the person as required must be established by a preponderance of the evidence. *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985).

In determining whether any condition of combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, the Court must take into account the available information concerning (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including (a) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, and (b) whether, at the time of the current offense or arrest, the person was

4

on probation parole, or other pretrial release; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g). *See also United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003).

Turning to the facts in the instant action, Defendant was charged with possession of a firearm after having previously been convicted of a misdemeanor crime of domestic violence, in violation of 18 U.S.C. §§ 922(g)(9) and 924(a)(2). Trial is scheduled for December 3, 2007. The Government does not argue that Defendant constitutes a risk of flight. Rather, the Government argues that Defendant's release would constitute a danger to the safety of the community. In support of its argument, the Government notes that Defendant has a history of violent offenses. In addition, Defendant resisted arrest on May 31, 2007, and it took two officers ten minutes to bring the Defendant under control. It would appear likely that Defendant was under the influence of a controlled substance at that time. Defendant told the pretrial services officer that he used methamphetamine "once weekly," although he claimed that he had last used six months ago. As recently as two weeks prior to the instant hearing, Defendant's mother found a powdery substance in Defendant's possession and contacted law enforcement authorities. Defendant fled the scene, however, before authorities arrived.

Based on the legal standards set forth above, and considering the evidentiary factors found in 18 U.S.C. § 3142(g), the Court finds by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community if the Defendant is released. The Court believes that if the Defendant is released, there is a substantial likelihood that he will continue to use controlled substances. Given his history of violent behavior, the Court concludes that Defendant's release constitutes a danger to the community. Therefore, pursuant to 18 U.S.C. § 3142(e), the Court concludes that Defendant should be detained prior to trial. Defendant was advised in open court of his right to file a motion with the District Court for revocation or amendment of this Order.

5

Case 6:07-cr-02019-MWB   Document 11   Filed 09/27/07   Page 5 of 6

## ORDER

IT IS THEREFORE ORDERED as follows:

1. The Defendant is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

2. The Defendant shall be afforded reasonable opportunity for private consultation with counsel.

3. On order of a Court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the Defendant is confined shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

DATED this 27th day of September, 2007.

_____
JON STUART SCOLES
United States Magistrate Judge
NORTHERN DISTRICT OF IOWA